# -EXHIBIT A-

DocuSign Envelope ID: 188D7EB7-679F-4874-90B9-DB69A50359C1



☐ A check in this box indicates that this agreement has been changed from the original.

# MASTER SERVICES AGREEMENT

**THIS MASTER SERVICES AGREEMENT** (this "***MSA***"), dated as of the **25th day** of **March, 2019** ("***Effective Date***"), is by and between DENOVO VENTURES, LLC, a Colorado limited liability company ("***Denovo***"), and **Oriental Trading**, Inc. a Delaware **Corporation** (the "***Client***") (each a "***Party***" and together the "***Parties***").

## RECITAL

Client desires to engage Denovo to provide certain products and services, and Denovo desires to provide such products and services, pursuant to the terms and conditions set forth herein.

## AGREEMENTS

**NOW, THEREFORE**, in consideration of the recitals and mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties to this MSA agree as follows:

1.      ***Construction.***  This MSA sets forth the general terms and conditions of the Agreement.  For each Service Denovo offers, there is a Statement of Work that sets forth more specifically the Services and Service Levels Denovo will provide the Client.  If the Client requests any Services that require a software product license or purchase (whether from a third party or from Denovo), in addition to an SOW, Denovo will provide a separate Order Document and any applicable license or other agreements to be executed by the Client.  Each SOW, combined with any applicable Change Orders and the MSA, shall constitute an independent contract, provided, however, that a default under any SOW or Order Document shall constitute a default under all other outstanding SOWs, Order Documents or other agreements executed between Denovo and Client.  Notwithstanding the foregoing, any Order Documents, as well as any license agreements and related documents executed in connection therewith, apply exclusively to the software and other products therein and shall not be part of this Agreement.  To the extent there are inconsistencies between the MSA and the SOW, the SOW will govern and control over the MSA.  The headings shall be disregarded in construing or interpreting the Agreement.

2.      ***Definitions.***  Capitalized terms not otherwise defined herein or in the applicable SOW or Change Order shall be defined as follows:

(i)      ***AAA.***  American Arbitration Association

(ii)     ***Aggregated Data.***  Any aggregated and statistical data derived from the operation of the Services, including, without limitation, the number of records in the Services, the number and types of transactions, configurations, and reports processed in the Services and the performance results for the Services

(iii)    ***Agreement.***  Each SOW, applicable Change Order and other documents executed pursuant to the MSA, combined with the MSA

(iv)    ***Change.***  The addition, subtraction or change to any Services related to the Agreement; a change that results in increased or reduced Fees for applicable Services; changes to the Service Levels; or any other change to the Agreement

DocuSign Envelope ID: 188D7EB7-679E-4874-90B0-DB69AA50359C



(v)     *Change Order.*  A fully executed Change Order Request form that details the Change agreed to by the Parties

(vi)    *Change Order Request.*  A formal request submitted by one Party to the other for a Change, as further described in Section 17 below

(vii)   *Client Applications.*  All software programs, including any source code for such programs, that the Client or the Client's clients provide in connection with the Agreement

(viii)  *Client Data.*  Client's Confidential Information and all text, files, images, graphics, information, data, illustrations, personal data, video, audio, photographs, and other content and material in any format, provided or uploaded by the Client in connection with the Agreement (but not including Work Product, Denovo Intellectual Property or any material provided by Denovo to Client and later provided or uploaded by Client)

(ix)    *Confidential Information.*  Any proprietary information or data (including the terms of the Agreement), internal business information including, without limitation, business plans, strategies, goals, financial statements, business methods and procedures, services provided, contractual arrangements, client and customer lists, work product, contact information, Trade Secrets (as defined below), and any other information designated as confidential by either Party

(x)     *Denovo Intellectual Property.*  All Intellectual Property that was developed by Denovo or on Denovo's behalf prior to performance of, or independent of, the Agreement or that is generally applicable to or useable by any of Denovo's other customers or for its business in general regardless of when developed, or that Denovo may, in connection with the performance of Services hereunder, employ, provide, modify, create or acquire or otherwise obtain rights in.  As used herein, "*Intellectual Property*" means all concepts, ideas, recommendations, methods, methodologies, procedures, processes, know-how and techniques, templates, programs, trademarks and service marks, Trade Secrets, copyrights, patents, software, inventions, discoveries, software, the generalized features of the structure, sequence and organization of software, user interfaces and screen designs, development tools (including without limitation general purpose consulting and software tools), utilities and routines, logic, integrations, coherence and methods of operation of systems, and all other intellectual property and improvements to any of the foregoing

(xi)    *Dispute.*  Any dispute, claim or controversy arising out of or relating to the negotiation, execution, and performance of the Agreement, including without limitation any alleged contractual, statutory, or tort claims, regardless of whether such claims are brought at law or in equity,  and any dispute regarding the arbitrability of such issues as set forth in the Dispute Resolution section below

(xii)   *Expenses.*  Reasonable out-of-pocket expenses that Denovo incurs in connection with the Services, including, without limitation, all reasonable travel, meal, lodging and mileage expenses

(xiii)  *Fees* or *Charges.*  Any fees or charges for the Services or products described in the Agreement

(xiv)   *Infringement Claim.*  Third party claims against the Client that any Work Product or Denovo Intellectual Property infringes a presently existing United States copyright, patent or trademark or constitutes misappropriation of unlawful disclosure or use of a third party's trade secrets under United States law

(xv)    *Initial Term.*  A period of Two (2) years commencing on the Effective Date .



(xvi)    **Late Charge.**  The lesser of (i) one and one half percent (1.5%) per month or (ii) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law

(xvii)    **Law.**  Any declaration, decree, directive, legislative enactment, order, ordinance, regulation, rule or other binding restriction of or by any federal, state, municipal, local, territorial, or other governmental department, regulatory authority, judicial or administrative body, whether domestic, foreign or international

(xviii)    **Order Document.**  An agreement between Denovo and the Client that describes the specific software and other products that Client will license or purchase from Denovo or a third party, as well as related terms and conditions.  Each Order Document, as well as any license or other agreement executed in connection therewith, is separate from any SOW provided by Denovo and this Agreement

(xix)    **Service Levels.**  The service levels, if any, that Denovo will adhere to as set forth in the applicable SOW

(xx)    **Services.**  Generally, all of the services Denovo agrees to provide the Client as set forth in any applicable SOW or Change Order including, without limitation, hosting, managed services, disaster recovery and consulting services

(xxi)    **Statement of Work** or **SOW.**  A statement of work that sets forth more specifically the Services, Service Levels Denovo will provide the Client, a schedule of Fees and Charges, as well as any further terms and conditions that may apply to the Services Denovo will provide the Client

(xxii)    **Successive Term.**  Individual, year-long terms after the Initial Term

(xxiii)    **Term.**  The Initial Term and all Successive Terms

(xxiv)    **Termination Date.**  The date on which the Agreement is terminated or expires pursuant to the terms of the Agreement

(xxv)    **Trade Secrets.**  Trade secrets as defined under C.R.S. § 7-74-102, including, without limitation, various computer systems and programs, techniques, developments, improvements, inventions, and processes that are, or may be, produced in the course of the applicable Party's operations, including any other information not generally known concerning such Party or its operations, including products, suppliers, markets, sales, internal costs, costs, margins, profits, client needs and lists, and the pricing information made available in the Agreement or other information acquired, disclosed, or made known to employees or agents while in the employ of such Party, which, if used or disclosed by a party other than such Party, could adversely affect such Party's business or give competitors an advantage

(xxvi)    **Work Product.**  Any Intellectual Property, software modifications, enhancements and/or interfaces, together with related specifications, design documents, flow charts, documentation, training manuals, reports, and other tangible work product specifically developed by Denovo for the Client in accordance with the Agreement, but not including Denovo Intellectual Property

3.    **Scope of Services.**  Denovo shall provide the Services to Client as set forth in the applicable SOW on the terms and conditions set forth in the Agreement.  The Services may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Client.  The Services are exclusively for the use of the Client and any of its employees or authorized users in accordance with the terms of the Agreement and may not be used by subsidiaries or other affiliates of the Client unless specifically permitted by the Agreement.  To the extent that the Services require the

DocuSign Envelope ID: 188D7EB7-679F-4874-90B0-DB69A450359C



provision of third party software or support, the Services shall be subject to the terms of Denovo's agreement with such third party provider as well as Client's agreement with such third party provider and Denovo shall have no liability with respect to such third party software or support, or with respect to Client's agreement with such third party provider, except as otherwise specifically stated in the Agreement.

4.      **Payment.**

(a)      **Fees and Expenses.**  Each SOW shall set forth the Fees that are to be paid to Denovo.  In addition, each SOW shall set forth the Expenses (or types of Expenses to the extent the amount of such Expenses aren't known) that are to be reimbursed by Client in accordance with Denovo's standard travel and expense policies.

(b)      **Invoices.**  Denovo will provide the Client with an invoice pursuant to the schedule set forth in the SOW, but not less often than monthly.  Each invoice shall set forth the Fees and Expenses owed to Denovo in reasonable detail, the SOW reference numbers, the cost of any products that are not included in a separate Order Document and, when applicable, the number of hours spent by Denovo personnel in providing the Services during the period invoiced and any accrued Late Charges.  For Services that are invoiced on a regular reoccurring basis (for example, for Services that require a monthly fee), Denovo reserves the right, in its sole discretion, to prorate the initial payment(s) in order to ensure that Client is subsequently billed on Denovo's regular billing cycle for such Services and to invoice such Services in advance.  If invoiced items are disputed, Client must notify Denovo within 15 days of invoice date.  If notice of dispute is not received within 30 days of invoice receipt, all items therein are deemed undisputed. Payment terms for all undisputed invoices or individual invoice items are net Forty-five (45) days from the date of invoice unless otherwise stated in the applicable SOW.

(c)      **Method of Payment.**  Unless otherwise agreed to in writing by both Parties, all amounts to be paid to Denovo under the Agreement shall be paid in U.S. dollars and may be made using electronic or automated clearing house (ACH), automatic bill pay mechanisms, or by federal wire transfer to the account or accounts designated in the applicable invoice.  If no such account is designated in an invoice, payment should be made to the account below:

>    Denovo Ventures, LLC
>    ACH/Wire: Pacific Mercantile Bank
>    ABA/Routing #122242869
>    Acct: #42696200
>    Beneficiary PMB Customer Account Name: Denovo Ventures Holdings, LLC
>
>    For international wire instructions please contact AR@Denovo-us.com

(d)      **Finance Charges.**  If Denovo does not receive payment for invoices within forty-five (45) days of the invoice date, the Late Charge shall accrue.  Such Late Charge will be added to the following invoice and shall be due and payable immediately upon receipt of such invoice.

(e)      **Taxes.**  Except for federal, state or local income taxes solely based on the income earned by Denovo, the Client shall be responsible for all taxes in connection with the Agreement including any sales, use, excise, value-added, services, consumption and other taxes and duties assessed on the provision of Services, products or materials by Denovo to the Client, on Denovo's charges to the Client under the Agreement, and on any goods or services used or consumed by either Party in connection with the provision of Services under the Agreement.

(f)      **Fee Increases**.  Denovo reserves the right to increase the applicable Fees during the Initial Term of the SOW by the yearly percentage increase for the previous calendar year in the Consumer Price Index – All Items



(CPI-U) as published by the U.S. Department of Labor Bureau of Labor Statistics or 3% whichever is less.  Denovo will notify Client in writing of any such increase in Fees for the following year by October 1 of the prior year, and such percentage increase will become effective as of January 1st of the following year.

5.      ***Term and Termination.***

(a)      ***Term.***  This MSA shall commence on the Effective Date and remain in effect for the Initial Term unless earlier terminated in accordance with the Agreement.  Notwithstanding the foregoing or any other provision herein, if a SOW is still in effect, the Term shall be extended until such SOW expires or is terminated.

(b)      ***Termination for Cause by Either Party.***  In addition to any termination rights set forth in an SOW regarding termination of such SOW, either Party may terminate the Agreement (and all SOWs, Order Documents and other agreements between Client and Denovo) for the other Party's material breach of the Agreement after giving at least thirty (30) days prior written notice identifying specifically the basis for such notice and referring to this Section of this MSA unless the breaching Party cures such breach within such thirty (30)-day period.

(c)      ***Termination for Cause by Denovo.***  In addition to any termination rights set forth in an SOW or Order Document regarding termination of such SOW, Denovo may terminate the Agreement and this SOW (and all SOWs, Order Documents and other agreements between Client and Denovo)  at any time immediately upon notice to Client if (i) an outstanding invoice remains unpaid forty-five (45) days after its applicable due date, (ii) the Client discloses Denovo's Confidential Information in violation of the Agreement, or (iii) the Client misuses or modifies the Work Product, Denovo Intellectual Property or other deliverables in a manner that causes the infringement of any third party's intellectual property rights.

(d)      ***Termination for Insolvency.***  Either Party may immediately terminate the Agreement (and all Sows, Order Documents and other agreements) in whole or in part if the other Party:

(i)      Makes an assignment for the benefit of creditors, admits in writing its inability to pay debts as they mature, or ceases operating in the normal course of business.

(ii)      Has a receiver or trustee appointed by a court over the Party or any substantial part of the Client's assets.

(iii)      Becomes insolvent or is unable to pay its debts as they become due.

(iv)      Authorizes, applies for or consents to the appointment of a trustee or liquidator of all or a substantial part of its assets or has proceedings seeking such an appointment commenced against it which are not terminated within ninety (90) days of such commencement.

(v)      Has any substantial part of its property subjected to any levy, seizure, assignment or sale for, or by any creditor or governmental agency without said levy, seizure, assignment or sale being lifted, released, reversed or satisfied within ten (10) days.

(vi)      Files a voluntary petition under any chapters of the United States Bankruptcy Code or any other insolvency law or an involuntary proceeding has been commenced by any Party against the Party under any one of the chapters of the United States Bankruptcy Code or any other insolvency law and (A) the proceeding has been pending for at least sixty (60) days; or (B) the Party has consented, either expressly or by operation of law, to the entry of an order for relief; or (C) the Party has been decreed or adjudged a debtor or equivalent.



(e)      **Suspension**.  In the event that the Client violates any material provision of the Agreement, Denovo may suspend any or all of the Services in addition to any other rights Denovo may have under the Agreement.  Denovo will use reasonable efforts to restore the suspended Services promptly after Denovo determines, in its reasonable discretion, that the issues have been resolved or the situation has been cured.

6.      **Employment Matters.**

(a)      **Denovo Staffing.**  Denovo shall assign personnel to the Client account that possess the training, education, expertise and skill levels appropriate for the Services to be provided by such personnel.  Denovo reserves the right to determine which of its personnel shall be assigned to perform Services, and to replace or reassign such personnel during the Term; provided, however, that Denovo, subject to scheduling and staffing considerations, shall use good faith efforts to honor the Client's request for or lawful objection to specific individuals.

(b)      **Client Staffing.**  Client shall assign personnel to the performance of Client responsibilities that possess the appropriate training, education, expertise and skill levels to perform such Client responsibilities.  Client reserves the right to determine which of its personnel shall be assigned to perform Client responsibilities, and to replace or reassign such personnel during the Term; provided that, the Client shall ensure that the performance by such personnel of Client responsibilities does not adversely affect the ability of Denovo to perform its obligations under the Agreement.

(c)      **Non-solicitation**.  Neither Denovo nor the Client shall solicit for employment, offer employment to, employ or hire as an independent contractor the other Party's employees, agents, or subcontractors during the Term of the Agreement and for a period of twelve (12) months following expiration or termination of the Agreement except as may be agreed to in writing by both Parties.  The Parties acknowledge that the damages caused by a breach of this Section would be difficult to ascertain.  Therefore, if either Party violates the foregoing restriction, as the breaching Party's sole obligation and the non-breaching Party's sole and exclusive remedy, the breaching Party will pay the non-breaching Party two (2) times the solicited employee's current annual salary.

(d)      **Independent Contractor.**  Denovo shall provide Services to Client as an independent contractor and nothing contained herein shall be construed to create a relationship of employer-employee or principal-agent between Denovo and Client.  Neither Party is, nor shall represent itself to be, an agent, partner, fiduciary, joint venture, co-owner or representative of the other.

7.      **Assignment and Subcontracting.**

(a)      Neither Party shall assign or subcontract any portion of the Agreement without the express and prior written consent of the other Party.  Notwithstanding the foregoing, in the event of a merger, acquisition, or sale of substantially all its assets, or reorganization, Denovo may assign the Agreement or any portion thereof to a successor-in-interest or any affiliate of Denovo that has the ability to perform the assigned obligations and has agreed to do so in writing.

(b)      Notwithstanding Section 7(a), Denovo may subcontract any of its duties under the Agreement, including, without limitation, any SOW or portion thereof, to a subcontractor in the ordinary course of business; provided, however, Denovo will remain liable to the extent provided herein for its performance under the Agreement.

8.      **Confidentiality.**

(a)      **General.**  To the extent that either Party comes into possession of any Confidential Information of the other Party in connection with the Agreement or otherwise, such Party may use the Confidential Information of

DocuSign Envelope ID: 188D7EB7-679F-4874-90B0-DB69A450359C



the other Party solely for the purposes of the Agreement, and shall not disclose such Confidential Information to any third party without the prior written consent of the other Party.

(b)      **Exclusions.**   Notwithstanding any provision herein to the contrary, Confidential Information shall not include information that (i) is or becomes publicly available (other than by breach of the Agreement), (ii) was disclosed to the receiving Party on a non-confidential basis from a source other than the disclosing Party, which the receiving Party reasonably believes is not prohibited from disclosing such information as a result of an obligation in favor of the disclosing Party, (iii) is developed by the receiving Party independent of and without reference to any Confidential Information of the disclosing Party, or was known by the receiving Party prior to any disclosure of such information made by the disclosing Party, in each case as evidenced by the receiving Party's written records, or (iv) is disclosed with the written consent of the owner of the Confidential Information.

(c)      **Protection.**   Each Party shall maintain the confidentiality of the Confidential Information of the other Party using at least the same degree of care as it employs in maintaining the confidentiality of its own Confidential Information, but in no event less than a reasonable degree of care.

(d)      **Remedies.**   If a Party discloses or uses (or threatens to use or disclose) any Confidential Information of the other Party in breach of the confidentiality protections under the Agreement, the other Party shall have the right, in addition to any other remedies available, to seek injunctive relief to enjoin such acts, as the Parties acknowledge that any other available remedies may be inadequate.

(e)      **Compelled Disclosure.**   Notwithstanding the above, the receiving Party shall not be in violation of this confidentiality obligation with regard to a disclosure that was in response to a valid order of a court of competent jurisdiction, administrative agency or governmental body, or by any law, rule or regulation, or by subpoena, summons or any other administrative or legal process, or by applicable regulatory or professional standards, provided that the receiving Party provides the disclosing Party with reasonable prior written notice of such disclosure in order to permit the disclosing Party to seek confidential treatment of such information.

(f)      **Trade Secrets.**   Denovo employs Trade Secrets that contain privileged or confidential commercial or financial information that would result in a competitive disadvantage if disclosed without prior permission by Denovo.  Because it would cause irreparable harm to Denovo if any of its Trade Secrets were known to its competitors, to the extent that Client learns any of Denovo's Trade Secrets, Client shall not disclose or use such Trade Secrets in its own business or for the benefit of any party other than Denovo.  In the event that the Client is a public entity and awards a contract to Denovo, the Client shall have the restricted right to disclose the entire contract dollar amount, however this disclosure shall not include itemized data or any Trade Secrets.

9.      **Ownership of Intellectual Property.**

(a)      **Denovo Ownership.**

(i)      Denovo shall retain all right, title and interest in and to Denovo Intellectual Property.

(ii)      All rights, title and interest in Work Product shall vest in Denovo unless otherwise expressly provided in the applicable SOW.

(iii)      Denovo shall own the Aggregated Data.  Denovo may utilize the Aggregated Data for purposes of operating Denovo's business unrelated to the provision of Services hereunder, provided that Denovo shall not reveal any Client Confidential Information.

DocuSign Envelope ID: 188D7EB7-679E-4874-90B0-DB69A450359C



(iv)     Except for any license expressly granted in the Agreement, neither the Client nor any third party shall acquire any right, title or interest in or to Denovo Intellectual Property or Work Product.

(b)     **Client Ownership.**  The Client shall retain all right, title and interest in and to the Client Data.  Client hereby grants to Denovo limited license to use the Client Data solely to the extent necessary for Denovo to perform the Services hereunder.

10.     **Indemnification.**

(a)     **General.**  The Parties shall have the following general indemnity obligations:

(i)     Each Party shall indemnify, defend and hold harmless the other and its officers, directors, members, managers, employees, subcontractors and agents from and against any and all taxes, penalties and fines imposed by any governmental agency that are such Party's responsibility hereunder.

(ii)     Denovo shall defend and hold harmless the Client and its officers, directors, members, managers, employees, subcontractors and agents from and against:

(1)     Infringement Claims so long as the Client promptly notifies Denovo in writing of the Infringement Claims.  Denovo shall provide such defense at its expense and will pay any costs or damages that may be finally awarded by a court of competent jurisdiction against the Client.  Denovo will not indemnify the Client, however, if the Infringement Claim is caused by (i) the Client's misuse or modification of the Work Product, Denovo Intellectual Property or other deliverables in a manner that causes the infringement; (ii) the Client's use of the Work Product, Denovo Intellectual Property or other deliverables in combination with any hardware, software or information not owned or developed by Denovo; (iii) the Client's failure to use corrections or enhancements to such Work Product, Denovo Intellectual Property or other deliverables made available by Denovo, (iv) the Client's distribution, marketing or use for the benefit of third parties of such Work Product, Denovo Intellectual Property or other deliverables or (v) information, specifications, software or materials provided by the Client or a third party.  If any Work Product is, or in Denovo's judgment is likely to become, the subject of an Infringement Claim, Denovo, at its expense and option, shall either (a) procure the right for the Client to continue using it, (b) replace it with a non-infringing equivalent, (c) modify it to make it non-infringing, or (d) direct the return of the Work Product and refund to the Client the Fees paid for such Work Product less a reasonable amount for the Client's use of the Work Product up to the time of return.  The foregoing constitutes the Client's sole and exclusive remedy and Denovo's entire liability with respect to Infringement Claims.

(2)     Any and all losses arising from claims by third parties relating to bodily injury or death of any person or damage to real and/or tangible personal property directly caused by the gross negligence or willful misconduct of Denovo, its personnel or agents in connection with the performance of the Services under the Agreement.

(iii)     The Client shall defend and hold harmless Denovo and its officers, directors, members, managers, employees, subcontractors and agents from and against:

(1)     Any claims that any Client Data or other content provided by the Client to Denovo and used by Denovo in accordance with the terms of the Agreement infringes a presently existing United States copyright, patent or trademark or constitutes misappropriation of unlawful disclosure or use of a third party's trade secrets under United States law.

DocuSign Envelope ID: 188D75B7-679F-487B-99B0-DB69AA50359Q



(2)      Any and all losses arising from claims by third parties relating to bodily injury or death of any person or damage to real and/or tangible personal property directly caused by the gross negligence or willful misconduct of the Client, its personnel or agents in connection with the Agreement.

(b)      **Procedure.**  To receive any indemnities specified in this Section, the Party seeking indemnification must promptly notify the other Party in writing of a claim or suit and provide reasonable cooperation (at the indemnifying Party's expense) and full authority to defend or settle the claim or suit.  The indemnifying Party shall have no obligation to indemnify the indemnified Party under any settlement made without the indemnifying Party's written consent.

11.      **Limitation of Liability; Disclaimer of Warranties.**  Unless otherwise specifically stated in an SOW with respect to the Services described in, or products or software provided or licensed under, such SOW, the following limitations of liability and disclaimers of warranties shall apply to the Agreement:

(a)      **Limitation of Liability.**  IF DENOVO SHALL BE LIABLE TO THE CLIENT FOR ANY MATTER RELATING TO OR ARISING FROM THE AGREEMENT, WHETHER BASED UPON AN ACTION OR CLAIM IN CONTRACT, WARRANTY, EQUITY, NEGLIGENCE, INTENDED CONDUCT OR OTHERWISE, THE AGGREGATE AMOUNT OF DAMAGES RECOVERABLE AGAINST DENOVO WITH RESPECT TO ANY AND ALL BREACHES, PERFORMANCE, NONPERFORMANCE, ACTS OR OMISSIONS HEREUNDER, OR ANY REASON WHATSOEVER, WILL NOT EXCEED THE AGGREGATE AMOUNT OF FEES ACTUALLY PAID BY THE CLIENT TO DENOVO UNDER THE SOW PURSUANT TO WHICH DENOVO IS PERFORMING THE SERVICES OR SELLING THE PRODUCTS GIVING RISE TO SUCH BREACH.

(b)      **Exclusion of Damages.**  IN NO EVENT SHALL EITHER PARTY OR ITS PERSONNEL BE LIABLE FOR CONSEQUENTIAL, SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR EXEMPLARY DAMAGES, COSTS, EXPENSES, OR LOSSES (INCLUDING, WITHOUT LIMITATION, LOST PROFITS AND OPPORTUNITY COSTS) NOR SHALL THEY BE LIABLE FOR ANY CLAIM OR DEMAND AGAINST THE OTHER PARTY BY ANY THIRD PARTY EXCEPT AS OTHERWISE SPECIFICALLY STATED HEREIN.  THE PROVISIONS OF THIS SECTION SHALL APPLY REGARDLESS OF THE FORM OF ACTION, DAMAGE, CLAIM, LIABILITY, COST, EXPENSE, OR LOSS, WHETHER IN CONTRACT, STATUTE, TORT (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE), OR OTHERWISE.

(c)      **Limitation on Actions.**  No action, regardless of form, arising under or relating to the Agreement, may be brought by either Party more than one year after the event giving rise to the cause of action has been discovered or reasonably should have been discovered, except that an action for non-payment may be brought no later than one year following the date of the last payment due hereunder.

(d)      **Subcontractor Liability.**  The exclusions and limitations of liability under the Agreement will operate to the benefit of Denovo's subcontractors under the Agreement to the same extent that such provisions operate to the benefit of Denovo.  Any limitations of liability hereunder will be computed for Denovo and its subcontractors in the aggregate.  Denovo's subcontractors shall be deemed third-party beneficiaries of this Section.

(e)      **Disclaimer of Warranties**.  EXCEPT AS OTHERWISE SPECIFICALLY SET FORTH IN THE AGREEMENT, DENOVO MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, AND DENOVO CANNOT AND DOES NOT GUARANTY ANY RESULT OR THE EFFECTIVENESS OF THE SERVICES, WORK PRODUCTS, DENOVO INTELLECTUAL PROPERTY OR OTHER GOODS SOLD OR SOFTWARE LICENSED HEREUNDER.  ANY SERVICES, WORK PRODUCT, DENOVO INTELLECTUAL PROPERTY OR OTHER GOODS SOLD OR SOFTWARE LICENSED HEREUNDER ARE PROVIDED "AS IS," AND ANY IMPLIED WARRANTY, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT IS EXPRESSLY DISCLAIMED.  NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE WARRANTIES ARE NULL

DocuSign Envelope ID: 2188D75B7-679F-487B-90B0-DB69AA503590



AND VOID IF THE SERVICES, WORK PRODUCTS, DENOVO INTELLECTUAL PROPERTY OR OTHER GOODS SOLD OR SOFTWARE LICENSED HEREUNDER HAVE BEEN MODIFIED, ALTERED, OR REPAIRED BY NON-DENOVO EMPLOYEES OR INDEPENDENT CONTRACTORS.

(f)     *Third Party Agreements*.  NOTWITHSTANDING ANY OTHER PROVISION IN THE AGREEMENT, DENOVO SHALL HAVE NO LIABILITY TO CLIENT UNDER ANY LICENSE OR OTHER AGREEMENT BY AND BETWEEN THE CLIENT AND A THIRD PARTY, REGARDLESS OF WHETHER SUCH LICENSE OR AGREEMENT RELATES TO DENOVO'S PROVISION OF SERVICES TO CLIENT.

12.     *Insurance.*  Denovo shall at its own expense maintain commercial automobile liability insurance and either commercial general liability insurance or, if necessary, professional liability insurance with minimum coverage as outlined below:

(a)     *Business Automobile Liability.*  Covering all vehicles that Denovo owns, hires, or leases with a limit of no less than $1,000,000 per accident/employee.

(b)     *Commercial General Liability.*  Including Contractual Liability Coverage, with coverage for products liability, completed operations, property damage and bodily injury, including death, with a minimum limit of no less than $1,000,000 each occurrence and a minimum limit of $2,000,000 in the aggregate.

(c)     *Professional Liability Insurance.*  Including Errors and Omissions coverage with a limit of no less than $5,000,000 per occurrence and in the aggregate.

13.     *Dispute Resolution.*

(a)     *General.*  In the event of any Dispute, one Party shall notify the other Party in writing of the Dispute in sufficient detail to put the other Party on notice of the nature of the Dispute.  The Parties shall work together in good faith first to informally resolve the Dispute internally by escalating it as necessary to progressively higher levels of the administrative structure.

14.     *Authority.*  Each Party represents and warrants to the other that (i) it is duly organized, validly existing and in good standing under the laws of the state in which it is organized or incorporated, (ii) it has all requisite power and authority to enter into the Agreement and to perform its obligations hereunder, and the execution of the Agreement and (iii) it has been duly authorized to consummate the transactions contemplated in the Agreement.

15.     *Marketing.*  Denovo will request written permission from Client to use Client's name, logo, trademarks and service marks on Denovo's website or in media releases.

16.     *Law and Regulation.*  Each Party shall be responsible for obeying Laws applicable to its business, including, without limitation, data privacy, intellectual property, employment and tax laws.

17.     *Change Order Process.*  A Change Order Request is the method by which either Party may communicate and eventually effectuate Changes to the Services outlined in the applicable SOW.  The Client or Denovo may request Changes by initiating the Change Order process.  To initiate the Change Order process, the Party requesting the Change must fill out the then-current Change Order Request form and submit it to the appropriate project leader of the other Party.  The Change Order Request must at a minimum describe the requested Change in sufficient detail for Client and Denovo to make a reasonable assessment of the request.

DocuSign Envelope ID: 188D75B76F9F487A92B0DB69AA50350Q



The Client and Denovo will review the Change Order Request promptly and follow up with each other as necessary for further clarification or to discuss the impact that the Change will have on the Services, deliverables, implementation schedule, Service Levels, terms and conditions, Fees and other provisions of the Agreement. A Change Order Request will not be effective nor will a Change be implemented unless the Change Order Request is executed by duly authorized representatives from both Client and Denovo.

Upon mutual acceptance of the Change Order Request, it becomes part of the entire Agreement between Denovo and Client with respect to the subject matter thereof.

Each Party will be responsible for all costs and expenses incurred by it in participation of the Change Order process unless otherwise agreed in writing. The failure of either Party to insist upon strict performance of the Change Order process for every Change shall not constitute a waiver of its rights as set forth in the Agreement, at law or equity.

18.     *Miscellaneous.*

(a)     *Modification.* The Agreement may not be modified or amended except by a written instrument executed by or on behalf of each of the Parties to the Agreement which specifically states that it amends the Agreement.

(b)     *Waiver.* The failure of either Party to insist upon strict performance of any of the provisions contained in the Agreement shall not constitute a waiver of its rights as set forth in the Agreement, at law or in equity, or a waiver of any other provisions or subsequent default by the other Party.

(c)     *Survival.* The provisions of Sections 1, 2, 4, 6(c), 8, 9, 10, 11, 13, 15 and 18 shall survive, notwithstanding the termination or invalidity of the Agreement for any reason.

(d)     *Entire Agreement.* The Agreement, including, without limitation, any addenda, exhibits, attachments, supplements, SOWs, Change Orders and schedules, constitutes the entire agreement between Denovo and the Client with respect to the subject matter hereof and supersedes all other oral and written representations, understandings or agreements relating to the Agreement.

(e)     *Force Majeure.* Except for payment of money, neither Party shall be liable for any delays or other non-performance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions of the other Party or third parties, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any government agency or authority.

(f)     *Notices.* Wherever under the Agreement one Party is required or permitted to give notice to the other Party, such notice shall be in writing and shall be delivered personally, sent by facsimile transmission, sent by nationally recognized express courier, sent by certified mail (return receipt requested), or sent by email. Any such notice shall be deemed given when actually received and shall be addressed as follows:

If to Client:

_____

_____

_____

Attention: _____

Email: _____

Fax: _____

DocuSign Envelope ID: 188D75B7-079F-487B-92B0-DB69AA503590



If to Denovo:
> Denovo
> 6400 Lookout Road
> Suite 101
> Boulder, CO  80301
> Attention:  Legal Department
> Email:  legal-notices@denovo-us.com
> Fax:_____

With a copy to:
> Ireland Stapleton Pryor & Pascoe, PC
> 717 17th Street, Suite 2800
> Denver, Colorado  80202
> Attention: Michael R. Miller
> Email: mmiller@irelandstapleton.com
> Fax: 303-623-2062

Either Party may change its address for notices upon giving written notice of the change to the other Party in the manner provided above.

(g)      **No Third Party Beneficiaries.**  Nothing contained in the Agreement is intended to confer upon any person (other than the Parties hereto, the indemnified parties specifically identified in Section 10, and any subcontractors expressly mentioned elsewhere in the Agreement) any rights, benefits or remedies of any kind or character whatsoever, and, except as otherwise specifically stated herein, no person shall be deemed a third party beneficiary under or by reason of the Agreement.

(h)      **Counterparts.**  The Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one agreement binding on the Parties, notwithstanding that both Parties are not signatories to the original or the same counterpart.  A facsimile or other electronic copy of a signature on the Agreement shall be acceptable as and deemed to be an original signature.

(i)      **Severability.**  If any term or condition of the Agreement or the application thereof to any person(s) or circumstances is held invalid, such invalidity shall not affect other terms, conditions or applications which can be given effect without the invalid term, condition or application.  To this end, the terms and conditions of the Agreement are declared severable.

(j)      **Governing Law; Jurisdiction.**  The Agreement, shall be governed by, and construed in accordance with, the laws of the State of Delaware (without giving effect to the choice of law principles thereof).

(k)      **Legal Representation and Construction of Agreement**.  The Parties acknowledge that the Agreement was prepared by counsel for Denovo.  The Parties have had the opportunity to retain their own independent legal and financial counsel with respect to the negotiation of the Agreement.  They have independently, separately, and freely negotiated each and every provision of the Agreement as if all Parties drafted it, and therefore, waive any statutory or common-law presumption that would serve to have this document construed in favor of, or against, any Party.

**[SIGNATURE PAGE TO FOLLOW]**



**IN WITNESS WHEREOF**, Denovo and the Client have executed this Master Services Agreement as of the date set forth above.

DENOVO VENTURES, LLC

By: _____
*Don Landrum*
A4103376C8AA4A3...

Name: _____
Don Landrum

Title: _____
Executive Vice President

Date: _____
3/29/2019


**Oriental Trading Company, Inc.**

By: _____
*Charles Hunsinger*
909D2E80B3F44DD...

Name: _____
Charles Hunsinger

Title: _____
SVP & CIO

Date: _____
3/28/2019